UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KELLY PRECHT, ET AL.** | **CASE NO. 2:18-CV-0853** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **COLUMBIA GULF TRANSMISSION, LLC** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Before the court are Motions for Summary Judgment filed, respectively, by plaintiffs Flavia and Kelly Precht [doc. 37] and defendant Columbia Gulf Transmission, LLC ("Columbia") [doc. 35]. Both motions are opposed and are now ripe for review.

### I.
### BACKGROUND

This matter began as a suit for damages filed under state tort and contract law by the Prechts in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, att. 2. The Prechts claim to have a farming lease over three tracts of land owned by Stone Family, LLC ("Stone"), which began as a verbal agreement in 2014. *Id.* at ¶ 3; doc. 37, att. 3, ¶ 3. Stone acquired the property from Barbara Helms Stone in December 1999 and has maintained ownership since that time. Doc. 35, att. 3, ¶ 9; doc. 35, att. 4.

In October 2014, while the Prechts allege their lease was already in existence, Stone entered into a Right of Way Agreement ("ROWA") with Columbia for the latter's installation of a natural gas pipeline through that land. Doc. 35, att. 5; *see* doc. 1, att. 2, ¶ 3. Through this agreement Stone granted Columbia a permanent servitude across the

-1-

property, measuring approximately 50 feet wide by 4,112 feet long, and an adjoining temporary servitude. *Id.*; doc. 35, att. 3, ¶¶ 10–11. As part of the ROWA, which was recorded in Calcasieu Parish on January 8, 2015, Columbia promised to replace and restore the area disturbed by pipeline construction, repair, and maintenance, and "to pay for any damage to marketable timber, crops, approved fences (if any) and approved tile drains (if any) that is caused by the activities conducted pursuant to this Agreement." Doc. 35, att. 5, p. 2; doc. 35, att. 3, ¶¶ 12–14. The Prechts' lease had not been recorded by the time the ROWA was recorded or executed. *See* doc. 35, att. 8, p. 1. A written lease was eventually signed by the Prechts and Bobby Welch in January 2017, but there is no evidence that it was ever recorded. *See* doc. 38, att. 8, pp. 57–59.

On the same date it executed the ROWA, in October 2014, Stone also signed a Release of All Claims against Columbia. Doc. 35, att. 3, ¶ 15. In exchange for the sum of $216,800, it provided, it agreed to release

> [Columbia], its successors, assigns, affiliates, contractors, agents and employees, of and from any and all claims . . . whatsoever which [Stone] now has or may hereafter have against them, arising out of, or in any way associated with, the laying, construction, maintaining, repairing and operating of pipelines and related facilities constructed across [Stone's property] . . . pursuant to [the ROWA], and specifically including, but not limited to, claims for damages necessarily resulting from the construction and operation of pipelines, which specifically include but are not limited to, (1) any and all liability for severance damages; (2) interference with the operations or use of the property by, [Stone], his lessee(s), and permittee(s); and (3) damage or destruction of any and all vegetation, including trees and growing crops, located within the permanent and temporary servitudes granted under the [ROWA].

Doc. 35, att. 6; *see* doc. 35, att. 7 (proof of Stone's acceptance of payment).

Columbia became aware of the Prechts' agricultural operations on the land by at least October 2016, when its agent met with plaintiff Kelly Precht about the project's impact on the latter's rice farming plans.[1] *See* doc. 43, att. 2, p. 10. Construction of the pipeline and restoration of the surrounding area lasted from December 2016 to May 5, 2018. Doc. 35, att. 3, ¶¶ 18–20. The Prechts then filed this suit against Columbia on May 18, 2018, seeking equitable and monetary relief under the ROWA and in tort based on damages Columbia allegedly caused to their farming operations. Doc. 1, att. 2.

Columbia removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The parties then filed cross-motions for summary judgment. Columbia asserts that the Prechts' claims are barred by the terms of the release, the ROWA, and their lack of ownership interest in the crops. Doc. 35, att. 1. The Prechts, meanwhile, maintain that the release is a nullity, that Columbia is responsible for damages to their farming operations, and that they are entitled to recover as third party beneficiaries to the ROWA. Doc. 37, att. 2. Both motions are opposed.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially

---

[1] Plaintiffs maintain that this awareness came by October 2014, before the ROWA or release was executed, when the agent emailed Donna Stone Welch "to confirm what, if any, tracts the LLC may have entered into a farming agreement with a specific tenant." *Id.* at 11. Donna Stone Welch's response is not recorded, however, and the agent's notes for two years later appear to reflect that he did not learn of the Prechts' agricultural operations or their alleged lease until October 2016. *See id.* at 9–10.

-3-

responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

# III.
## APPLICATION

Columbia asserts that the plaintiffs cannot recover for any damages under contract or tort law because (1) the release bars any claim for damages under the ROWA; and (2) the trespass claim fails as a matter of law because the Prechts cannot establish their ownership of the crops and because Columbia had a lawful right to conduct activities on the property under the ROWA. Doc. 35; doc. 35, att. 1. The Prechts oppose both arguments, asserting (1) that the release is invalid under Louisiana Civil Code article 2004 and under a stipulation *pour autrui* allegedly created in their favor under the ROWA and (2) that fact issues preclude summary judgment on the trespass claim. Doc. 38. In their own motion, they repeat their argument of a stipulation *pour autrui* and assert that Columbia's actions have caused them to suffer over $350,000 in damages, based on their expert's economic analysis. Doc. 37, att. 2. In opposing the Prechts' motion, Columbia also asserts that 1) the entire suit is undermined by their inability to prove the existence of a valid farming lease and 2) the Prechts' expert estimate of damages should not be credited. Doc. 42.

### A. Columbia's motion – contract claim

#### 1. Article 2004

To determine the release's impact on the ROWA and the Prechts' claims thereunder, the court first addresses the Prechts' contention that the release is invalid as a whole. Louisiana law provides that a party may exclude or limit its liability for losses due to negligence. La. Civ. Code art. 2004. A clause is null, however, if it excludes or limits a party's liability for damages caused by intentional or gross fault or for causing physical

injury to another. *Id.* "Gross fault," as used in this provision, means "not only gross negligence, but also bad faith breach of contract or fraud." *Alonso v. Westcoast Corp.*, 920 F.3d 878, 885 (5th Cir. 2019).

The Prechts assert that the release is invalid because it releases Columbia from "from any and all claims" associated with the pipeline, without reference to the limitations described above. The release, however, is not nullified in its entirety under Article 2004 "unless, from the nature of the provision of the intention of the parties, it can be presumed that the contract would not have been made without the null provision." *Wadick v. Gen. Heating & Air Conditioning, LLC*, 145 So.3d 586, 599 (La. Ct. App. 4th Cir. 2014) (quoting La. Civ. Code art. 2034). Here there is nothing to suggest that either party would have declined to sign the release had it contained Article 2004's limitations. Accordingly, the release of claims arising from damages to land from Columbia's negligence stands.

### 2. *Stipulation pour autrui*

Columbia moves for summary judgment on the basis that the Prechts are not parties to the ROWA, and that even if they are, their claims are extinguished by the release. The Prechts maintain that they have a cause of action as third party beneficiaries under the ROWA, and that their status under this agreement is not impacted by the release.

Under a "stipulation *pour autrui*," Louisiana law allows a contracting party to stipulate a benefit for a third person, known as a third party beneficiary. La. Civ. Code art. 1978; *see, e.g., Joseph v. Hosp. Svc. Dist. No. 2 of Par. of St. Mary*, 939 So.2d 1206, 1211 (La. 2006). The Prechts assert that they are third party beneficiaries under a stipulation

*pour autrui* created by the ROWA and that the release has no impact on their status under this agreement.

"The fact that a third party derives a benefit from a contract does not render the contract *pour autrui*." *Wallace v. Texaco*, 681 F.2d 1088, 1090 (5th Cir. 1982). Instead, the court must consider the following three criteria: "whether 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Wuellner Oil & Gas, Inc. v. EnCana Oil & Gas (USA) Inc.*, 861 F.Supp.2d 775, 780–81 (W.D. La. 2012) (quoting *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44 (5th Cir. 2010)). Such a stipulation is never presumed, and the party claiming the benefit bears the burden of proof. *Joseph v. Hosp. Svc. Dist. No. 2 of Par. of St. Mary*, 939 So.2d 1206, 1212 (La. 2006).

The Louisiana Supreme Court has recognized stipulations *pour autrui* in favor of a farming tenant in similar cases. In *Andrepont v. Acadia Drilling Co.*, 231 So.2d 347 (La. 1969), it considered the status of a soybean farmer, through an unrecorded verbal lease, under a mineral lease between the landowner and a drilling company. The mineral lease had originally stated that the lessee, a drilling company, was responsible for damages to "timber and growing crops of lessor caused by lessee's operations." *Id.* at 349. It was amended to state: "The lessee shall be responsible for all damages caused by lessee's operations." *Id.* Under this language, the Louisiana Supreme Court found that a stipulation *pour autrui* existed in favor of Andrepont and that he had a cause of action under the mineral lease for damages to his crops caused by the defendant's operations. *Id.* at 349–53.

In *Hargroder v. Columbia Gulf Transmission Co.*, 290 So.2d 874 (La. 1974), the court considered a right of way agreement between landowner and pipeline company, and again found a stipulation *pour autrui* in favor of a farming tenant. In that agreement the defendant had agreed "to pay such damages which may arise to growing crops, timber, or fences from the construction of the (pipeline)." *Id.* at 876 (alteration in original). Noting that the agreement contained no restriction as to beneficiaries, the court again found that the clause created a stipulation *pour autrui* in favor of the farming tenant. *Id.* Where the lessee's obligation to pay was explicitly limited to "damages of the lessor," however, the court departed from *Andrepont* and *Hargroder* and found no stipulation. *Broussard v. Northcott Expl. Co., Inc.*, 481 So.2d 125, 127 (La. 1986)

Here the damages provision of the ROWA obligates Columbia to pay for damages to crops caused by its activities under the agreement, without restriction as to beneficiary. *See* doc. 35, att. 5, p. 2. Accordingly, under *Hargroder* and *Andrepont*, it would appear to create a stipulation in favor of the Prechts. Columbia maintains, however, that other provisions of the ROWA and release undermine the similarities. The bulk of these are unpersuasive. As Columbia notes, the Prechts' lease was not recorded at the time the ROWA was executed or recorded. However, the agricultural leases in both *Andrepont* and *Hargroder* were unrecorded, with the in *Andrepont* likewise being verbal. Columbia points to language directly after the ROWA's damages clause, providing for arbitration to determine the amount of damages payable. *See* doc. 35, att. 5, pp. 3–4. The ROWA provides that Columbia and Stone will each appoint one arbitrator, and those two arbitrators will appoint a third. *Id.* The provision does not limit to whom damages might

be owed. Finally, Columbia notes that Stone represented in the ROWA that there had not been any industrial or commercial use of the property. *See* doc. 35, att. 5. This representation does not necessarily conflict with the Prechts' agricultural uses of the property.

Columbia presents a closer question by pointing to the release itself. There, contemporaneous to its execution of the ROWA, Stone agreed to waive all claims against Columbia arising out of damages to crops. Doc. 35, att. 6. It also agreed that there would be no agricultural activities on its property "until all construction and warranty work has been completed." *Id.* Columbia relies on *Menard v. UCAR Pipeline, Inc.*, 465 So.2d 231 (La. Ct. App. 3d Cir. 1985), for the proposition that a landowner's release of claims against an oil and gas company is binding on his tenants. In that matter, the servitude was executed five years before the tenant began leasing the property and the court made no mention of his potential status as a third party beneficiary to the servitude. Additionally, the release here is expressly limited to Stone's claims and not those brought by tenants on their own behalf: although it includes claims relating to interference with tenants' operations and destruction of crops, it speaks only of the grantor's release of Columbia "from any and all claims . . . which [Stone] now has or may have against" it. Doc. 35, att. 6 (emphasis added). The release in *Menard* spoke more generally of claims contemplated under the right of way agreement, which specifically mentioned the pipeline company promise to pay the landowner "and/or [its] tenants" for damages to crops, livestock, et cetera. 465 So.2d at 233. Columbia does not show a sufficient basis for binding the Prechts through the release. It also fails to show that the release, though contemporaneously executed, was integrated

with the ROWA so that it could undermine the clearly manifested benefit to the Prechts, to the extent they are agricultural lessees, under the latter document. Finally, a promise to refrain from agricultural use of the land during Columbia's operation does not exclude the Prechts' claims even if it is binding on them – they also claim damages to the extent Columbia has impacted their ability to farm that land in the future. Accordingly, Columbia's motion must be denied as to this claim.

### B. *Columbia's Motion – Tort Claim*

The Prechts also seek to recover under Louisiana tort law, based on a claim of civil trespass. Columbia asserts that there is no right to relief on this claim because the Prechts cannot establish ownership over the land or crops at issue.

"A trespass occurs when there is an unlawful physical invasion of the property or possession of another person." *Harrington v. Abshire*, 732 So.2d 677, 682 (La. Ct. App. 3d Cir. 1999). Plaintiff thus bears the burden of proving ownership over the object of the trespass. *E.g.*, *Chauvin v. Shell Oil Co.*, 231 So.3d 903, 907 (La. Ct. App. 5th Cir. 2017). Tracts of land and their component parts are immovable property. La. Civ. Code art. 462. Where growing crops belong to the landowner, they are component parts of the tract of land. *Id.* at art. 463. Where there is separate ownership of the crops and the landowner, the crops are movables by anticipation. *Id.* at art. 474. Common ownership is presumed, however, "unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located." *Id.* at art. 491. Otherwise, a third party is entitled to presume that the crops belong to the landowner. *Id.* at art. 491, cmt. (e). This presumption is conclusive and the third party's actual knowledge

-10-

of the situation is irrelevant. *Broussard v. Northcott Exploration Co.*, 481 So.2d 125, 128 (La. (1986). Because the Prechts have not shown that the lease was ever recorded, they cannot establish ownership of the crops with respect to third persons. Accordingly, Columbia is entitled to summary judgment on the trespass claim. Because Columbia is entitled to judgment as a matter of law on the Prechts' claims, the Prechts' motion is moot.

### C. Prechts' Motion

The Prechts assert that they are entitled to summary judgment because they can show that Columbia's actions amounted to a breach of contract and/or tort, causing them damages in the amount of $353,601.91.[2]

As determined above, the ROWA may create a stipulation *pour autrui* in favor of the Prechts to the extent that they have a valid interest in crops growing on Stone's land and permit them to recover if their crops were harmed by Columbia's operations under the ROWA. The validity of that interest, however, depends on the validity of the underlying lease. Columbia argues that there are genuine disputes of material fact on this issue, precluding summary judgment on the Prechts' ROWA claim.

> Under the Louisiana Civil Code, a lease is
>
> a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.

La. Civ. Code art. 2668. "Nothing in the law prohibits the verbal lease of immovable property." *Holt v. Bethany Land Co.*, 843 So.2d 606, 612 (La. Ct. App. 2d Cir. 2003) (citing

---

[2] This figure is reported by plaintiffs' expert Earl Garber, a licensed agricultural consultant, and includes farm infrastructure restoration costs as well as crop damages. Doc. 37, att. 7; *see* doc. 37, att. 8, p. 7.

La. Civ. Code arts. 1839 and 2440). So long as a verbal lease contains all essential elements and the parties act on it, "neither may withdraw on the pretext the lease was not reduced to writing." *Id.*

At the time the ROWA was executed, the Prechts claimed to be farming the land pursuant to a verbal agreement with Stone. They provide an "Environmental Quality Incentives Program Landowner(s) Concurrence," signed in March 2015 by Bobby Welch, whom plaintiff Kelly Precht describes as a "member of Stone Family, L.L.C." Doc. 37, att. 3, ¶ 5; doc. 37, att. 5. Precht also declares that he originally discussed an agricultural lease of the property with Bobby's wife, Donna Stone Welch, and that she directed him to discuss the matter with her husband. Doc. 43, att. 1.

Columbia maintains that this lease was invalid, because Bobby Welch lacked any authority to lease the land. As it shows, Stone is a manager-managed limited liability company. Doc. 42, att. 2, ¶ 6; doc. 42, att. 3. At all times pertinent to this lawsuit, the only members have been siblings Donna Stone Welch, George Stone, and Katherine Stone Marin, with Donna and George acting as the only two managers during this time. Doc. 42, att. 2, ¶¶ 4–6; doc. 42, att. 3. Only members have authority to alienate, lease, or encumber the company's immovable property, and only by a majority vote among the members. Doc. 42, att. 2, ¶ 7. The ROWA and release were signed by both George Stone and Donna Stone Welch. Doc. 42, att. 2, ¶¶ 11–12; doc. 35; atts. 5 & 6.

The Prechts argue that Bobby Welch had either actual authority, granted by his wife, or apparent authority to bind Stone to a lease. They provide no evidence, beyond Precht's cursory declaration of authority being conferred by one member-manager, of Welch's

actual authority to bind the company to a lease. Accordingly, the court only considers whether Welch had apparent authority to act on Stone's behalf in this matter.

The Prechts provide the declaration above, in which Kelly Precht states that member-manager Donna Stone Welch referred him to her husband when he approached her about leasing the Stone land for farming. They provide notes from Columbia's agent, reflecting his dealings with Stone from February 2014 to April 2017. Doc. 43, att. 2, pp. 6–12. The agent records that in October 2016, he met with Kelly Precht and Bobby Welch, whom he described as "one of the owners," regarding the operation's impact on their plans to plant rice on the tracts. *Id.* at 10. He also dealt with Bobby Welch over various construction issues from November 2016 through February 2017. *See* doc. 43, att. 2, p. 8.

Under Louisiana law, the party seeking to bind the principal bears the burden of proving apparent authority. *Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.*, 817 So.2d 427 (La. Ct. App. 2d Cir. 2002). "A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent." *Id.* In other words, it is the actions of the principal and not those of the alleged agent that must induce the third party to believe that such apparent authority exists. *Where Angels Tread, Ltd. v. Dansby*, 855 So.2d 906, 911 (La. Ct. App. 2d Cir. 2003) (citing La. Civ. Code art. 3021). "[W]hen the [alleged agent] alone has contact with the third party, and leads the third party to believe that he has the principal's authority to conduct business on the principal's behalf, but the principal itself has never made such manifestations," then the principal is not bound. *Am. Bank and Trust v. Singleton*, 233 So.3d 730, 737 (La. Ct. App. 1st Cir. 2017). Additionally, apparent

authority will only be found where the third party both actually and reasonably believed that the agent was authorized to act on the principal's behalf. *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La. 1989).

The Prechts show that Kelly Precht negotiated the alleged lease with Bobby Welch, at Donna Stone Welch's express direction. They have also established that Bobby Welch was regarded as having enough authority over the land that Columbia addressed him directly with questions about their operations. Still, the latter evidence does not show that any Stone member acted to cloak Bobby Welch with such authority. Meanwhile, the support for the former is flimsy – it comes in only a two-paragraph declaration by Kelly Precht, with a good deal of information missing about his knowledge of Stone and the property's ownership. Precht admitted in his prior declaration that he has farmed land owned by Stone Family, LLC for over twenty years. Doc. 37, att. 3, ¶ 2. Given this history, the court would expect a more creditable basis for his alleged belief that Bobby Welch had authority to lease property on behalf of the company. Columbia has thus shown that genuine issues of material fact remain with respect to the validity of the lease and so the Prechts' motion must be denied.

## IV.
### CONCLUSION

For the reasons stated above Columbia's motion will be granted in part and denied in part, and the plaintiffs' tort claim will be dismissed with prejudice. At the same time, the Prechts' motion will be denied.

**THUS DONE** in Chambers on this __24__ day of __July__, 2019.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE